527 S.E.2d 361

**Francis GREGOIRE, Respondent,**

v.

**Gary S. BYRD, Appellant.**

**No. 3066.**

Court of Appeals of South Carolina.

Heard Oct. 6, 1999.

Decided Nov. 1, 1999.

Refiled Jan. 17, 2000.

C. Rauch Wise, of Greenwood, for appellant.

Dalton H. Watkins, of the Watkins Law Firm, of Columbia, for respondent.

### ORDER WITHDRAWING ORIGINAL OPINION AND SUBSTITUTING SUBSEQUENT OPINION, AND DENYING PETITION FOR REHEARING

PER CURIAM:

Opinion No. 3066, filed in the appeal above on November 1, 1999, is hereby withdrawn and the following opinion is substituted therefor. Furthermore, after careful consideration of

the Petition for Rehearing, the court is unable to discover any material fact or principle of law that was either overlooked or disregarded. Accordingly, there is no basis for rehearing. It is therefore ordered that the petition for rehearing is denied.

**AND IT IS SO ORDERED.**

I adhere to my dissent and would grant the rehearing.

/s/ Ralph King Anderson, Jr., J.

GOOLSBY, Judge:

Francis Gregoire sued Gary S. Byrd seeking an order enforcing a Maine judgment. The trial court held the Maine judgment was entitled to full faith and credit in South Carolina. Byrd appeals. We affirm.

On January 31, 1994, Gregoire, a Maine resident, came to South Carolina and purchased a 1966 Ford Mustang from Byrd, a South Carolina resident, for $9,500.00. Later, after becoming dissatisfied with the car, Gregoire sued Byrd in the District Court, Division of Eastern York, State of Maine, alleging causes of action for misrepresentation and breach of warranty. Byrd answered the complaint asserting, "I do not submit to the jurisdiction of this court." Byrd also denied Gregoire's allegations and asserted various substantive defenses.

On February 1, 1995, Gregoire filed a summary judgment motion. Accompanying the motion were a document entitled "Plaintiff's Statement of Undisputed Facts" and an affidavit executed by Gregoire himself. Both these documents address the material allegations of Gregoire's substantive claims as well as the issue of personal jurisdiction.

Within the motion was a memorandum of law entitled "Section 1–Jurisdiction," in which Gregoire requested "an order granting summary judgment on the issue of personal jurisdiction in this case" and gave a detailed argument supporting this request. In the motion itself, however, Gregoire requested "summary judgment on his claim, on the grounds that there is no genuine issue as to any material fact set forth in the pleadings and Affidavit of Plaintiff annexed hereto, and that Plaintiff is entitled to judgment as a matter of law."

As required by Maine court rules, the summary judgment motion included language advising Byrd that he had 21 days

after the filing of the motion to file any matter in opposition to it, that Byrd's failure to "file timely opposition" would be deemed a waiver of all objections to the motion, and that the motion could be granted without further notice or hearing in the event of such a failure.[1] On February 27, 1995, several days after the time to file a response had expired, Byrd filed two documents with the Maine court. In the first document, entitled "Responce [sic] to Motion for Summary Judgment," Byrd asserted the Maine court did not have personal jurisdiction over him. In the second document, entitled "Defendant's Statement of Undisputed Facts," Byrd gave his version of the substantive facts of the case.

On May 15, 1995, the Maine court ruled and wrote on the face of Gregoire's motion: "Summary Judgment *Granted* on the issue of liability, only, in favor of Plaintiff. The clerk shall schedule a hearing in damage [sic] and notify the parties." (Emphasis added.) The damages hearing took place July 17, 1995, and Byrd appeared at the hearing. That same day the Maine court also entered a judgment against Byrd for $2,000. An amended order followed July 26, 1995, increasing the award to $6,500. Byrd moved, apparently unsuccessfully, to vacate the judgment,[2] but took no appeal from the decision.

Gregoire subsequently filed this action in the Lexington County Court of Common Pleas, seeking a South Carolina judgment against Byrd based on the Maine judgment. The trial court held Byrd, after "having appeared and filed responsive pleadings and a response to Plaintiff's Motion for Summary Judgment, including matters related to the question of jurisdiction," could not collaterally attack the judgment of the Maine court. Furthermore, the trial court found the Maine

---

1. The Maine Rules of Civil Procedure provide in part as follows:

   Any motion ... shall include a notice that matter in opposition to the motion ... must be filed not later than 21 days after the filing of the motion unless another time is provided by these Rules or set by the court. The notice shall also state that failure to file timely opposition will be deemed a waiver of all objections to the motion, which may be granted without further notice or hearing. If the notice is not included in the motion, the opposing party may be heard even though matter in opposition has not been timely filed.
   Me.R.Civ.P. 7(b)(1).

2. No order by the Maine court adjudicating this motion appears in the record on appeal.

court's exercise of personal jurisdiction over Byrd did not violate Byrd's due process rights. Accordingly, the trial court accorded the Maine judgment full faith and credit in South Carolina.

■ Byrd contends the trial court erred in giving full faith and credit to the Maine judgment, claiming: (1) the issue of personal jurisdiction was not fully and fairly litigated and (2) the Maine court did not have personal jurisdiction over him. We agree with the trial court that Byrd cannot assert these arguments in South Carolina.

■ The Full Faith and Credit Clause of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the ... judicial Proceedings of every other State." [3] The thrust of the clause is that courts of one state must give such force and effect to a foreign judgment as the judgment would receive in the issuing state.[4] As a result, "a foreign judgment which is regular on its face generally may not be collaterally attacked." [5]

In *Colonial Pacific Leasing Corp. v. Taylor*,[6] this court affirmed an order giving full faith and credit to an Oregon judgment. In that case, the defendant had raised to the Oregon court the issue of personal jurisdiction along with other defenses. This court affirmed the finding that the defendant could have litigated the issue of personal jurisdiction in the Oregon proceeding by virtue of having made a general appearance in that action.[7]

---

3. U.S. Const. art. IV, § 1.

4. *Purdie v. Smalls*, 293 S.C. 216, 359 S.E.2d 306 (Ct.App.1987).

5. *Bankers Trust Co. v. Braten*, 317 S.C. 547, 550, 455 S.E.2d 199, 200 (Ct.App.1995).

6. 326 S.C. 529, 484 S.E.2d 595 (Ct.App.1997).

7. *Id.* at 534, 484 S.E.2d at 597–98. Furthermore, we agree with Byrd that he did not waive his right to assert the lack of personal jurisdiction by merely including substantive defenses in his answer. *See* Me. R. Civ. P. 12(b) (requiring the defense of lack of personal jurisdiction to be asserted in the answer and further stating: "No defense or objection is waived by being joined with one or more other defenses or objections in the answer."). The question here, however, is not whether Byrd

Byrd contends the Maine court did not make specific factual findings or issue any rulings on personal jurisdiction and the trial court therefore erred in holding that issue was fully and fairly decided in the underlying action. He attempts to distinguish *Colonial Pacific* by arguing the defendant in that case "after initially raising the issue of lack of personal jurisdiction, never filed any other papers or documents in support of its position ... [whereas] [i]n the present case [Byrd] filed a response to the issue of lack of personal jurisdiction." As we understand Byrd's argument, he contends: (1) unlike the present case, the issue of whether the Oregon court in *Colonial Pacific Leasing Corp.* actually ruled on the issue of personal jurisdiction was not on appeal before this court and (2) because he continued to challenge the assertion of personal jurisdiction in his response to Gregoire's summary judgment motion, the Maine court had to issue an explicit ruling on this question before the judgment could be given full faith and credit in South Carolina. We disagree.

■ Notwithstanding "the general rule that a judgment is entitled to full faith and credit-even as to questions of jurisdiction-when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment," [8] the absence of an explicit ruling on personal jurisdiction in this case does not make the Maine judgment unenforceable under the Full Faith and Credit Clause.

■ First, the presumption of regularity of a judgment includes the presumption that the issuing court had jurisdiction over the subject matter and the parties.[9]

Second, contrary to Byrd's contention on appeal, the summary judgment motion encompassed more than the issue of personal jurisdiction. The documents filed with the motion

---

conceded the issue of personal jurisdiction but whether the Maine court fully and fairly decided it.

**8.** *Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (emphasis added) *(quoting Colonial Pac. Leasing Corp.,* 326 S.C. at 533, 484 S.E.2d at 597).

**9.** *Taylor v. Taylor,* 229 S.C. 92, 91 S.E.2d 876 (1956) (citing *Cook v. Cook,* 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951)).

related specific facts concerning Byrd's liability, and Gregoire stated in the motion itself that he was moving for "summary judgment on his claim." Byrd's response to the summary judgment motion was not timely; therefore, there were no issues of material fact to prevent the Maine court from granting summary judgment on the issue of liability.[10]

Finally, although Byrd himself raised the issue of personal jurisdiction and had the opportunity to litigate it in the Maine proceeding, he made, at best, only a procedurally deficient motion to vacate the judgment on that basis [11] and did not pursue the issue on appeal in Maine. Because Byrd agreed to litigate the issue of personal jurisdiction in Maine, the judgment is not subject to collateral attack on that ground.[12]

---

10. *See* Me.R.Civ.P. 56(c) ("[Summary] [j]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the *statements required by Rule 7(d)* show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law.") (emphasis added). Under Rule 7(d)(2) of the Maine Rules of Civil Procedure, "[a]ll material facts set forth in the statement required to be served by the moving party, if supported by appropriate record references, *will be deemed to be admitted* unless *properly* controverted by the statement required to be served by the opposing party." (Emphasis added.)

11. *See* Me.R.Civ.P. 59(e) ("A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."); *Most v. Most*, 477 A.2d 250, 257 (Me.1984) ("Although on its face, this rule [Me.R.Civ.P. 59(e) ] does not specifically authorize a court to modify a judgment duly entered, its history indicates it permits substantive alteration when necessary to achieve substantial justice."). Gregoire objected to the motion, alleging, among other things, the motion failed to comply with certain procedural requirements of Rule 7 of the Maine Rules of Civil Procedure, including the requirement that a copy of the motion be sent to opposing counsel. Byrd apparently did not file anything in reply to Gregoire's objection.

12. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction: That decision will be res judicata on that issue in any further proceedings."); *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931) (disallowing a collateral attack by the respondent on a foreign judgment and noting, among other things, that the respondent had

Because we hold the trial court properly determined the Maine judgment was entitled to full faith and credit in South Carolina, we decline to address the merits of Byrd's jurisdictional challenge.

**AFFIRMED.**

CONNOR, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, Judge (dissenting):

I respectfully dissent. The majority holds Byrd is barred from asserting in South Carolina that the Maine court did not have personal jurisdiction over him. I disagree.

In reaching this conclusion, the majority relies on *Colonial Pacific Leasing Corp. v. Taylor,* 326 S.C. 529, 484 S.E.2d 595 (Ct.App.1997):

> "The requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, *where the defendant has been accorded full opportunity to contest the jurisdictional issues,* and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree."

*Id.* at 534, 484 S.E.2d at 597 (emphasis added).

Because Byrd was *not* "accorded full opportunity to contest" the jurisdictional issue, *Colonial Pacific* is not controlling here. In his answer, Byrd declared: "I do not submit to the jurisdiction of this court." Thereafter, in his response to Gregoire's summary judgment motion, Byrd challenged the Maine court's jurisdiction over him. These responses did not constitute a general appearance on Byrd's part. In ruling on the summary judgment motion, the court merely made a handwritten notation in the margin which read: "Summary Judgment *Granted* on the issue of liability, only, in favor of Plaintiff. The Clerk shall schedule a hearing in damages and notify the parties."

waived its right to a direct appeal of the foreign court's adverse ruling on personal jurisdiction).

Admittedly, no *notice* of any nature whatsoever was given to Byrd before the two sentence order was issued by the Maine court. Gregoire contends the Maine court had the right to issue the order without notice under the Maine Rules of Civil Procedure (the Maine Rules). Gregoire had moved for summary judgment. Rule 7 of the Maine Rules mandates a response to a summary judgment motion within twenty one days. Byrd responded on the twenty seventh day. Facially, the Maine court held Byrd in default and issued the order. This was improper.

The North Carolina Court of Appeals, in *Erlich Foods Int'l v. 321 Equip. Co.*, 80 N.C.App. 71, 341 S.E.2d 69 (1986), was faced with a situation similar to the case *sub judice*. Erlich Foods (the plaintiff), a California company, filed an action in California against 321 Equipment Company (the defendant), a North Carolina company. The defendant submitted in writing to the California court a document entitled "SPECIAL APPEARANCE TO CONTEST JURISDICTION." In this document, the defendant moved the court to dismiss the action for lack of personal jurisdiction. Attached was a sworn affidavit of Bernard Dalton as president of the defendant company, denying any contacts with the state of California which would be sufficient to allow a California court to exercise jurisdiction over the defendant. A document entitled "ARGUMENT IN SUPPORT OF SPECIAL APPEARANCE TO CONTEST JURISDICTION" was submitted by the defendant. The document stated, *inter alia*, " '321 Equipment Company has no contacts whatsoever with the state of California, and that the service obtained in this matter was defective.' " Id. at 72. The defendant further argued consistent with its special appearance that the California court did not have jurisdiction over it. Thereafter, the plaintiff unsuccessfully attempted to enter default against the defendant but the " 'clerk . . . declined to do so.' " *Id.*

Approximately eight months later, the defendant's counsel received a copy of a document entitled "Notice of Motion and Motion for an Order Entering Default Against 321 Equipment Company, Points & Authorities and Declaration of James Weston and Bruce Altschuld in Support Thereof." The basis for the plaintiff's motion entailed allegations that documents filed by the defendant did not constitute proper responses to a

serving of summons and complaint and "[did] not serve to make a proper challenge to jurisdiction." *Id.* The plaintiff requested the following:

"Under these circumstances, it is Plaintiff's position that the Defendant has made no adequate attempt to challenge the jurisdiction of the court and in fact has, in effect, not responded to the Court's summons in an appropriate manner. Therefore, Plaintiff respectfully requests that Defendant's 'Special Appearance to Contest Jurisdiction' should be stricken and Default should be entered against the Defendant."

*Erlich Foods Int'l*, 341 S.E.2d at 72.

The defendant was not represented at the hearing on the plaintiff's motion. The court struck the special appearance of the defendant and entered default.

The plaintiff then instituted an action in North Carolina alleging it was entitled to have the North Carolina court give full faith and credit to a default judgment entered in a California court against the defendant. The trial court found the defendant did not have sufficient contacts with the state of California for the California courts to exercise personal jurisdiction over the defendant. On appeal, the North Carolina Court of Appeals concluded:

The court did not consider any of defendant's grounds for contesting the California court's exercise of personal jurisdiction over defendant. The court merely granted plaintiff's request to strike defendant's pleadings because of plaintiff's assertion that they were improper responses to its complaint and summons. We hold that by striking defendant's special appearance the court effectively precluded the full and fair litigation of defendant's assertion that the California court should not be allowed to exercise in personam jurisdiction over it.

*Erlich Foods International*, 341 S.E.2d at 72 (emphasis added). Similarly, in the instant case, by ignoring the issue, the Maine court "effectively precluded the full and fair litigation" of Byrd's contention the Maine court did not have personal jurisdiction over him.

Moreover, the Maine court did *not* address the "jurisdictional issue," either factually or legally. I reject the notion the

Maine court implicitly ruled on jurisdiction. The word "jurisdiction" is not in the order, which is imbued with brevity. Does the word "liability" mean "jurisdiction"? To encapsulate "jurisdiction" into the word "liability" would strain grammatical endeavors. Simplistically put, the Maine court ignored the basic constitutional issue of jurisdiction *in personam*. The record of the Maine court wreaks havoc with the mandate of decisions emanating from the United States Supreme Court in regard to Full Faith and Credit activities.

Further, adverting to the merits, the appropriate query is whether the Maine court properly exercised personal jurisdiction over Byrd pursuant to Maine law. The validity and effect of a foreign judgment must be determined by the laws of the state that rendered the judgment. *See Hamilton v. Patterson*, 236 S.C. 487, 115 S.E.2d 68 (1960).

The jurisdictional reach of Maine's long-arm statute, Me. Rev.Stat.Ann. tit. 14, § 704–A (1980), is coextensive with the permissible exercise of personal jurisdiction under the due process clause of the fourteenth amendment. *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189 (Me. 1993). In order to exercise personal jurisdiction over a nonresident defendant consistent with the requirements of due process, the court must conclude that (1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice. *Murphy v. Keenan*, 667 A.2d 591 (Me.1995). The plaintiff bears the burden of establishing that Maine has a legitimate interest in the controversy and that the requisite minimum contacts exist such that the defendant should reasonably expect litigation in Maine. *Frazier v. BankAmerica Int'l*, 593 A.2d 661 (Me.1991). Once these matters have been established, the burden of proof shifts to the defendant to show that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *Murphy, supra.*

In the present case, the sale of the car was conducted in South Carolina. Byrd never traveled to Maine, nor did he conduct any business activity there. His only contact with

Maine was the advertisement he placed in a national magazine. Gregoire's cause of action does not arise out of an act done or transaction consummated in Maine. Byrd did not avail himself of any law or benefit of Maine merely by advertising in the national publication. *See Carothers v. Vogeler*, 148 Vt. 316, 532 A.2d 580 (1987). Gregoire failed to demonstrate the requisite minimum contacts exist between Byrd and the state of Maine so that Byrd should reasonably expect he would be subject to suit in Maine. Thus, Gregoire did not meet his burden of establishing the second prong of the three part legal standard for due process in the exercise of personal jurisdiction.

I would hold Byrd did *not* have sufficient contacts with the state of Maine to allow Maine to exercise personal jurisdiction over Byrd. The trial court erred by giving full faith and credit to the Maine judgment. Additionally, I conclude Byrd was not "accorded full opportunity to contest" the jurisdictional issue. Finally, the Maine court made no ruling on the jurisdictional issue.