## 1013

Stanley PURDIE, Respondent v. Sandra SMALLS, Appellant.

(359 S. E. (2d) 306)

Court of Appeals

*Celeste Tiller Jones* and *Alison Renee Lee*, both of *McNair Law Firm*, Columbia, *for appellant.*

*Jack A. Landix*, Moncks Corner, *for respondent.*

*Donald M. Holler*, Moncks Corner, *Guardian Ad Litem.*

Heard June 15, 1987.

Decided Aug. 10, 1987.

CURETON, Judge:

This action was brought to enforce a New York custody order under Full Faith and Credit Clause of the United States Constitution and the Uniform Child Custody Jurisdiction Act. The trial judge upheld a New York temporary order changing custody to the father. We reverse and remand.

The parties are the unwed parents of four year old Chrystal Purdie who has lived with her mother, the appellant, since birth. In March 1984 respondent Stanley Purdie obtained an order declaring him to be Chrystal's father.

After recurring confrontations between the parties, the Queens County Family Court mutually restrained both parties from molesting or assaulting the other by its order of January 15, 1985. In a consent order issued the same day the parties agreed that custody would be awarded to the mother

and specified the father's visitation rights. On June 28, 1985, the Queens County Family Court (Judge Carmen J. Cognetta, Jr.) issued a final order of visitation.

On July 2, 1985, the mother petitioned the Family Court of Queens County asking that the father be held in contempt for violating the terms of the restraining order because of an alleged assault by the father upon her.

By an answer and counterclaim dated August 12, 1985, the father requested he be awarded custody of Chrystal. The mother's address at the foot of the answer and counterclaim is different from her address reflected on her petition. There is no indication in the record that the mother was ever legally served with these pleadings or that she otherwise had notice of their existence. According to the mother, the address on the answer and counterclaim was her sister's address.

A hearing was scheduled on the mother's petition for September 30, 1985. Both parties were present for the hearing. On that date, her case was continued until October 21, 1985, so that it could be heard by Judge Cognetta, who was familiar with the case but had been transferred to the Richmond County Family Court. Until the date of this continuance, all matters between the parties had been heard in the Family Court for Queens County, where the parties resided.

On October 5, 1985, the mother and Chrystal moved to the mother's parents' home in Berkeley County, South Carolina. The mother stated she moved to South Carolina to care for her ailing parents and she intends to remain here. She also stated that she intended to abandon her petition against the father for violation of the New York restraining order.

On October 16, 1985, the father filed an affidavit with the New York court stating that he had been denied visitation with Chrystal since September 30, 1985, and that he thought the mother had taken the child to California. Pursuant to the father's affidavit, Judge Cognetta, now sitting in Richmond County, issued an Order to Show Cause requiring the mother to appear and show cause on October 21, 1985 why she should not be held in contempt for violating the visitation order. The order also required the mother to produce the child at the hearing on the rule. Judge Cognetta directed

that the rule be served on the mother by express mail by October 19, 1985. The rule was express mailed to an address in New York, presumably to the mother's sister's address indicated in the father's affidavit. There is no indication in the record that the mother ever received the Rule To Show Cause. The mother did not appear at the October 21 hearing and a warrant was issued for her arrest directed to peace officers of the State of New York.

No further action was taken until March 11, 1986, when Judge Cognetta granted the father temporary custody. The full body of his order reads: "Temporary custody of child, Chrystal Purdie, to Petitioner (father)."

The father filed this action on April 29, 1986, requesting the South Carolina Family Court to grant full faith and credit to the New York custody order and give him custody of the child. The trial court arrested the mother pursuant to the husband's petition and the New York arrest warrant and brought her before the court for an immediate hearing on April 30, 1986. At the time of the April 30 hearing no responsive pleadings had been filed by the mother. After the hearing, the mother filed a "Petition For Rehearing" in which she claimed several defenses to the father's petition and prayed that she be awarded custody of her child. The trial judge granted the father the relief he requested, finding he had no jurisdiction because the New York Court had continuing jurisdiction of the case and the mother's New York action was still pending. He found that the New York order of temporary custody should be enforced under provisions of the Uniform Child Custody Jurisdiction Act and accorded it full faith and credit under the United States Constitution. The South Carolina Supreme Court granted supersedeas and left custody with the mother during the pendency of this appeal.

## FULL FAITH AND CREDIT

The thrust of the Full Faith and Credit Clause of the United States Constitution is that courts of one state must give such force and effect to a judgment of a sister state as the judgment would have in the sister state. *Hamilton v. Patterson*, 236 S. C. 487, 115 S. E. (2d) 68 (1960); *Aetna Casualty & Surety Company v. Security Forces Inc.*, 290 S. C. 20,

347 S. E. (2d) 903 (Ct. App. 1986); *see Durfee v. Duke*, 375 U. S. 106, 84 S. Ct. 242, 11 L. Ed. (2d) 186 (1963).

■ As a general rule, the temporary or interlocutory orders of one state are not entitled to full faith and credit in another state. *Lynch v. Lynch*, 303 N. C. 367, 279 S. E. (2d) 840 (1981); *Ferster v. Ferster*, 219 Ga. 543, 134 S. E. (2d) 600 (1964); *Gladfelter v. Gladfelter*, 205 Ark. 1019, 172 S. W. (2d) 246 (1943); *Henry v. Henry*, 74 W. Va. 563, 82 S. E. 522 (1914); 47 Am. Jur. (2d) *Judgments* Section 1268 (1969); *Restatement (Second) of Conflict of Laws* Section 107 (1971); *see, Sistare v. Sistare*, 218 U. S. 1, 30 S. Ct. 682, 54 L. Ed. 905 (1910). However, the validity and effect of a foreign judgment must be determined by the laws of the state that rendered the judgment. *Searl v. Searl*, 34 N. C. App. 583, 239 S. E. (2d) 305 (1977); *see, Aetna Casualty & Surety Company v. Security Forces Inc., supra.* New York adheres to the general rule that a foreign temporary order is not entitled to full faith and credit in New York. *People v. Pritchett*, 1 A. D. (2d) 1009, 151 N.Y.S (2d) 481 (1956), *aff'd*, 2 N. Y. (2d) 947, 162 N.Y.S. (2d) 354, 142 N. E. (2d) 421 (1957). (Illinois court's order awarding temporary custody of children to husband suing wife for divorce was not such a final determination as to be entitled to full faith and credit in New York proceeding brought by husband to obtain custody from the wife). *See Berlin v. Berlin*, 21 N. Y. (2d) 371, 288 N.Y.S. (2d) 44, 235 N. E. (2d) 109 (1967).

■ Clearly, the New York custody order was temporary or interlocutory in nature. We therefore hold the trial judge operated under a misapprehension of the law in ruling that the United States Constitution required him to give full faith and credit to the temporary order.[1]

Finally, judgments obtained in violation of procedural due process are not entitled to full faith and credit when sued upon in another jurisdiction. *Griffin v. Griffin*, 327 U. S. 220, 66 S. Ct. 556, 90 L. Ed. 635 (1946). Because the mother did not receive notice and an opportunity to be heard by the New

---

[1] The mother's exceptions mention and her brief argues error on the part of the trial court in affording full faith and credit to the New York arrest warrant. However, the appealed order does not enforce the arrest warrant in any way.

York Court on the father's custody claim, as is discussed more fully below, the temporary custody order is not entitled to full faith and credit in the courts of this State.

## UNIFORM CHILD CUSTODY
## JURISDICTION ACT

The trial court also found that the New York temporary custody order was entitled to enforcement under the provisions of the Uniform Child Custody Jurisdiction Act which is part of the statutory law of both South Carolina and New York. We do not think the Act requires enforcement of the temporary custody order. Section 20-7-808, Code of Laws of South Carolina, 1976 provides:

> The courts of this State shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this subarticle or which was made under factual circumstances meeting the jurisdictional standards of the subarticle, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this subarticle.

The jurisdictional standards for entry of a decree under the Act are found in Section 20-7-790 which provides:

> Before making a decree under this subarticle, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this State, notice and opportunity to be heard shall be given pursuant to Section 20-7-792.

Section 20-7-792 provides for service "by any form of mail addressed to the person to be served and requesting a receipt." The Section also provides for service as directed by the court, including publication, "if other means of notification are ineffective." However, notice must have been "served, mailed or delivered" at least twenty days before the scheduled hearing, except when the moving party convinces the court that an emergency or an abandonment situation

exists within the meaning of Section 20-7-788(a)(3) so as to place the child in jeopardy.

Sections 20-7-790 and 20-7-808 unmistakably declare ■ that our family courts need afford full faith and credit to custody orders of other states only if those orders are competently entered in accordance with standards set forth in Subarticle 2 of Chapter 7 of the Children's Code. Here, it is manifest that the New York Family Court did not give the mother notice and an opportunity to be heard on the father's custody claim. There is no evidence in the record the mother was served with the father's custody pleadings or had any notice of them. Further, even if we were to assume that the express mailing of the October 16, 1985 Order to Show Cause was sufficient service of that pleading, there is no indication in the Order to Show Cause or the father's affidavit attached thereto that the father sought custody of the minor child. Therefore, the March 11, 1986 temporary custody order, even if otherwise legally sufficient, was simply entered without any notice and opportunity being given the mother to defend against the father's custody claim as required by the Act.

Aside from the requirements of the Uniform Act, in ■ New York there are specific statutes governing the service of process or the giving of notice to parties. *See* N. Y. Civ. Prac. Law and Rules Section 301 *et seq.* (McKinney 1972). Service is only effective when made pursuant to the appropriate method authorized by these rules. *Markoff v. South Nassau Community Hospital,* 61 N. Y. (2d) 283, 473 N.Y.S. (2d) 766, 461 N. E. (2d) 1253 (1984). While Section 308 permits service by mail or as directed by the court when other methods fail, there is no indication that the father's claim for custody was served by any authorized method. Further, New York law states that use of a special mode of service where the prescribed statutory methods have been exhausted is purely a notice provision. *Prince v. Prince,* 69 Misc. (2d) 410, 329 N.Y.S. (2d) 963 (Sup. Ct. 1972). Here, there is no evidence that the mother had notice of the father's custody claim. Further, when there is a denial by a party of receipt by mail of a notice, a hearing is required to determine whether the papers had in fact been mailed. *Empire National Bank v. Judal Construction of N.Y., Inc.,*

61 A. D. (2d) 789, 401 N.Y.S. (2d) 852 (App. Div. 1978). The mother's denial of service shifted the burden to the father to substantiate service. *See Anton v. Amato,* 101 A. D. (2d) 819, 475 N.Y.S. (2d) 298 (App. Div. 1984). There is no evidence of service of any of the father's pleadings or the Rule To Show Cause upon the mother.

The mother contends that under the Uniform Child Custody Jurisdiction Act the trial judge should have undertaken to determine whether the New York temporary custody order should be modified. Because we have held that the temporary order is not entitled to full faith and credit in our courts, this argument would appear to be moot. The trial court is not restricted by Code Section 20-7-810 from exercising jurisdiction over this matter. Moreover, since South Carolina is the home state of the child under provisions of Section 20-7-788, the South Carolina Family Court may exercise its jurisdiction and determine the custody issue. Finally, our research of New York law convinces us that a court of that State would not feel constrained under the facts of this case from litigating the custody issue there if the temporary custody order had been issued here and the questions faced by the trial court arose in New York. *See Berlin v. Berlin, supra* (In determining whether to refuse to exercise discretion to modify foreign custody decree, the question is not whether a parent is estopped by his participation in foreign proceeding from relitigating issue but rather what is in the best interest of the child).

The mother's other arguments regarding improper venue of the New York Court and the lack of findings in the New York temporary order are without merit and we dispose of them under provisions of Section 14-8-250, Code of Laws of South Carolina, 1976.

For the foregoing reasons, the judgment appealed from is reversed and the case remanded to the trial court to determine the custody claims of the parties.

Reversed and remanded.

GARDNER and SHAW, JJ., concur.