### 2067

Sherri Lynn CLARK and Myron Calvin Clark, Appellants v. Kristen Nicole GORDON, a minor under the age of fourteen(14) years, and Michael S. Gordon, Respondents.

(437 S.E. (2d) 144)

Court of Appeals

*J. Pamela Price* and *J. Robin Turner*, Columbia, *for appellants.*

*Ronald A. Barrett*, Columbia, *for respondents.*

Heard June 8, 1993.

Decided August 23, 1993.

CURETON, Judge:

This action began as one for termination of the parental rights of the respondent father, Michael S. Gordon, and the adoption of the minor child, Kristen Nicole Gordon (Kristen), by her stepfather, appellant Myron Calvin Clark. After receipt of suit papers, Gordon served and filed a motion under Rule 12(b), SCRCP, to dismiss the action for lack of jurisdiction.

On January 20, 1992, at a hearing on Gordon's motion, the trial judge determined that a Missouri Court had issued an order on October 17, 1990 granting custody of the minor child to Gordon. Based on the Uniform Child Custody Jurisdiction Act (UCCJA), S.C. Code Ann. § 20-7-782 *et seq.*, the court recognized the Missouri order, held South Carolina is not the proper forum to entertain a challenge to the Missouri order, and granted Gordon's motion to dismiss this action. The Clarks appeal. We reverse and remand.

The Clarks and Kristen currently reside in South Carolina. Gordon resides in Missouri. Kristen was born in Kansas and was almost seven years old at the time of the hearing.

Sherri Clark (Sherri) and Michael Gordon were divorced in Kansas on September 11, 1986. They were granted joint custody of the child.

Missouri subsequently became Kristen's home state. Thereafter, Kansas, at the request of Sherri, declined jurisdiction in visitation proceedings brought by Gordon in Kansas, and Missouri assumed jurisdiction.

In April 1989 Sherri instituted an action in the Circuit Court of Greene County, Missouri. She requested that Gordon's visitation rights be terminated and that she be permitted to remove Kristen from Missouri. Gordon filed a counter petition, requesting change of custody of the child based upon, *inter alia*, Sherri's failure to permit visitation. He also asserted Sherri had removed Kristen from Missouri for a period in excess of ninety (90) days in violation of Mo. Rev. Stat. § 452.377. By order filed on October 17, 1990, the Missouri court granted custody of the minor child to Gordon.

## I.

The threshold issue for determination is whether the trial court's jurisdiction is defined by the UCCJA, because this is an action for adoption and termination of parental rights, not a custody action.

Whether the UCCJA applies to an adoption proceeding depends upon whether an adoption action is a custody proceeding within the meaning of the UCCJA. We have uncovered no South Carolina authority which addresses this issue. S.C. Code Ann. § 20-7-786 (2) defines "custody determination" for purposes of the UCCJA as follows:

> [A] court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person.

S.C. Code Ann. § 20-7-786(3) states that a "'custody proceeding' includes proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." Neither definition refers to adoption or termination of parental rights proceedings.

Our review of decisions from other jurisdictions reveals they are divided on this issue. *See* Danny R. Veilleux, Annotation, *What Types of Proceedings or Determinations are Governed by the Uniform Child Custody Jurisdiction Act*

*(UCCJA) or the Parental Kidnapping Prevention Act (PKPA)*, 78 A.L.R. 4th 1028 (1990). Jurisdictions which have held adoption proceedings are within the ambit of the UCCJA reason that the ultimate effect of termination and adoption proceedings is to completely terminate the custody rights of the child's parent. *See Gainey v. Olivo*, 258 Ga. 640, 373 S.E. (2d) 4, 6 (1988); *Foster v. Stein*, 183 Mich. App. 424, 454 N.W. (2d) 244, 246 (1990); *In re Adoption of B.E.W.G.*, 379 Pa. Super. 264, 549 A. (2d) 1286, 1290 (1988); *Souza v. Superior Court*, 193 Cal. App. (3d) 1304, 238 Cal. Rptr. 892, 895 (1987). Those jurisdictions taking the opposite view premise their decisions on the conclusion that adoptions are not included in the UCCJA's definition of "custody proceeding." *See Williams v. Knott*, 690 S.W. (2d) 605, 608 (Tex. Ct. App. 1985); *In re Johnson*, 415 N.E. (2d) 108, 110-11 (Ind. Ct. App. 1981).

We believe the proper approach to resolve this issue is to afford the trial judge flexibility in each case to decide whether the substantive controversy is one of custody. If so, then the case should be treated as a custody case regardless of the name in which the controversy is cloaked. We adopt the reasoning of the *Gainey* court "that the language and purpose of the UCCJA are broad enough to encompass adoption proceedings." 373 S.E. (2d) at 6.

The record reflects that Sherri and Gordon have been engaged in legal combat regarding Kristen for several years. The trial court could have justifiably concluded that the instant action is just another round in this ongoing feud. We also note that a review of Sherri's counsel's argument at the family court hearing and counsel's "Memorandum Of Law And Return To Defendant's Motion To Dismiss" do not even suggest the inapplicability of the UCCJA. Moreover, the trial court's order does not expressly deal with the issue. Under the facts of this case, the trial court properly characterized the Clark's action as one in which a "custody determination" is an issue. *See* S.C. Code Ann. § 20-7-786(2) (1976) as amended.

## II.

The principal issue argued by the Clarks at the motion to dismiss hearing and on appeal is the trial court's failure to determine it had jurisdiction to consider the circumstances under which the Missouri custody decree had been granted.

The Clarks argue that the UCCJA requires that only those out-of-state decrees described in the Act, and which were entered substantially in accordance with the substantive laws of South Carolina, be given full faith and credit. Sherri contends she did not have proper notice of the Missouri Court proceedings which resulted in the order granting custody of the child to Gordon. They argue that the trial court should have inquired into Sherri's allegations that she was denied notice and an opportunity to be heard in the Missouri proceedings, and its failure to do so constitutes reversible error.

Gordon responds that the Clarks are trying to avoid the obvious intent of the UCCJA by attempting to infuse it with meanings that are not present in the statute. He argues that if each state court were able to consider out-of-state decrees in the manner proposed by the Clarks, the forum shopping which the Uniform Act was designed to prevent would no longer be deterred.

The trial court held that a challenge to the validity of the Missouri order should properly be determined by the courts of Missouri. The court "specifically enter[ed] no finding or conclusion as to the notice issues raised by Plaintiff Sherri Lynn Clark."

It is undisputed that Sherri and Kristen had lived in this state for over six months at the time the instant action was commenced. Thus, South Carolina is the home state of the child and competent to decide this custody matter pursuant to S.C. Code Ann. § 20-7-788. *Sinclair v. Albrecht*, 287 S.C. 20, 22-23, 336 S.E. (2d) 485, 487 (Ct. App. 1985). However, the specific language of § 20-7-810 has been interpreted to give the court that issues a custody decree continuing and exclusive jurisdiction as long it can satisfy the jurisdictional requirements of § 20-7-788, despite the fact that a subsequent court may otherwise claim jurisdiction. *See Knoth v. Knoth*, 297 S.C. 460, 463-64, 377 S.E. (2d) 340, 342 (1989). Nevertheless, § 20-7-808 does not require South Carolina courts to enforce custody orders of other states, where those orders are entered contrary to the requirements of the Act. S.C. Code Ann. § 20-7-808 provides:

The courts of this State shall recognize and enforce an initial or modification decree of a court of another state

which had assumed jurisdiction under statutory provisions substantially in accordance with this subarticle *or which was made under factual circumstances meeting the jurisdictional standards of the subarticle,* so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this subarticle (emphasis added).

The jurisdictional standards for entry of a decree under the UCCJA are found in § 20-7-790, which provides:

Before making a decree under this subarticle, *reasonable notice and opportunity to be heard shall be given to the contestants,* any parent whose parental rights have been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this State, notice and opportunity to be heard shall be given pursuant to § 20-7-792 (emphasis added).

This Court has stated that "[s]ections 20-7-790 and 20-7-808 unmistakably declare that our family courts need afford full faith and credit to custody orders of other states only if those orders are competently entered in accordance with standards set forth in Subarticle 2 of Chapter 7 of the Children's Code." *Purdie v. Smalls,* 293 S.C. 216, 222, 359 S.E. (2d) 306, 309 (Ct. App. 1987). In *Purdie,* the father brought an action in South Carolina to enforce a New York order which had changed custody from the mother to the father. This Court held that the mother did not receive notice and an opportunity to be heard by the New York Court on the father's custody claim. We stated the "judgments obtained in violation of procedural due process are not entitled to full faith and credit when sued upon in another jurisdiction." *Id.* at 220, 359 S.E. (2d) at 308.

The question of whether the trial court erred, therefore, appears to be controlled by the *Purdie* case. The record on appeal includes affidavits supporting Sherri's claim that she did not have notice of the Missouri hearings.[1] The court states in its order it considered the October 17th order of the Missouri court. As best we can discern from the

---

[1] Also, the trial court apparently did not consider affidavits which Gordon presented at the hearing.

record, the trial court decided as a matter of law that it had no authority to determine the validity of the Missouri order. It entered no specific findings of fact or conclusions of law as to the issue of notice raised by the Clarks.

The purpose of the UCCJA requiring notice is to preserve the fairness of the hearing. It is of vital importance to both the child and the parent that the hearing meet constitutional standards of fairness. *See Thorne v. Thorne*, 344 So. (2d) 165, 169 (Ala. Civ. App. 1977). To the extent the trial court refused to consider or determine whether it had authority to consider the validity of the Missouri order, it was in error.[2] Clearly, the trial court had the authority to and should have determined whether the Missouri order was entered in accordance with the notice requirements of §§ 20-7-790 and 20-7-792 before it dismissed the Clarks' action for lack of jurisdiction. We reverse and remand this case to the trial court to make findings of fact and conclusions of law on the notice issue and for such additional determinations as may be appropriate.

Because we reverse and remand this case to the family court, we need not address the Clarks' other grounds for reversal.

Reversed and remanded.

SHAW and GOOLSBY, JJ., concur.

---

[2] We recognize the trial court may have declined jurisdiction pursuant to §§ 20-7-796 and 20-7-798. In such an event, however, the trial court must state its reason for declining jurisdiction. There is no indication that the trial judge declined jurisdiction pursuant to either section.