657 S.E.2d 455

**John and Jane DOE, Appellants**

**v.**

**BABY GIRL, a minor under the age of fourteen years, and Birthfather, Respondents.**

**Birthmother, Respondent,**

**v.**

**John and Jane Doe and Baby Girl, a minor under the age of fourteen (14) years, Defendants,**

**Of Whom John and Jane Doe are the, Appellants.**

**No. 26425.**

Supreme Court of South Carolina.

Heard Nov. 15, 2007.
Decided Jan. 28, 2008.

268

270

Raymond William Godwin, of Greenville, for Appellants.

Robert L. Jackson, of Columbia, for Respondent Birthmother, and Birthfather, pro se, of Rockfort, IL.

F. Earl Ellis, Jr., of Columbia, Guardian Ad Litem.

Justice WALLER:

In this interstate adoption case, appellants John and Jane Doe directly appeal from two South Carolina family court

orders. The first order dismissed appellants' adoption action based on jurisdictional grounds. The second order enforced an Illinois decree which ordered the return of the baby girl to respondent Birthmother in Illinois. We reverse.

## FACTS

On June 16, 2006, Birthmother gave birth in Illinois to a full-term baby girl ("Baby Girl"). On June 19, 2006, court proceedings were held in Illinois circuit court. Attorney Denise Patton represented Birthmother who stated under oath that she intended to place Baby Girl up for adoption and the prospective parents resided in South Carolina. Birthmother indicated she would be signing a South Carolina consent to adoption. During the proceedings, she signed a "Consent to Guardianship" document. After questioning Birthmother, the court waived the appointment of a guardian *ad litem* and appointed Patton guardian of Baby Girl. ("June Illinois Order").

Also on June 19, 2006, Birthmother signed the following four documents: (1) a relinquishment of parental rights; (2) a consent to jurisdiction under South Carolina law; (3) an affidavit of identification; and (4) a consent to adoption. In the consent to jurisdiction document, Birthmother acknowledged that appellants, who live in South Carolina, would be filing a South Carolina petition to adopt Baby Girl. Moreover, this choice of law document expressly stated the following:

> Having been informed about the law in both South Carolina and Illinois, I hereby submit to the jurisdiction of the state of South Carolina. **I agree that all matters relating to the adoption of my child, including, but not limited to the right to revoke my Relinquishment,** to notice of further proceedings in the adoption and termination of my parental rights, **shall be determined in accordance with the laws of the state of South Carolina.**

(Emphasis added).

In the identification document, Birthmother checked a box indicating she did not know the identity of the biological father, yet also inconsistently stated the following: "I was raped and I only knew the birth father through friends of friends. I do not know his full name and will not say his first

name." In the consent to adoption, she refused to name the birth father, but she did state he had not supported her and had not paid any pre-birth expenses.

On June 20, 2006, appellants returned to South Carolina with Baby Girl and filed an action for adoption **in South Carolina** family court.

On July 14, 2006, **Birthfather** filed a petition **in Illinois** circuit court requesting that the court void *ab initio* the June Illinois Order which appointed Patton guardian of Baby Girl for the purpose of transporting her to South Carolina. Birthfather's petition alleged that Birthmother knew the identity and whereabouts of Birthfather at all times and had told him the baby had been born dead. Birthfather argued that because he received no notice, the Illinois court was without jurisdiction to enter the June Illinois Order. Appellants were not named as parties in Birthfather's petition despite the fact that they had physical custody of Baby Girl in South Carolina at the time.

Appellants, however, upon finding out Birthfather's identity, filed an amended adoption complaint in South Carolina family court on July 21, 2006. Birthfather was named and referenced in the amended pleading. The family court thereafter granted appellants' request for an emergency hearing. The hearing took place on July 31, 2006, and Judge Turbeville issued a temporary order on August 2, 2006, which: (1) granted temporary legal custody of Baby Girl to appellants; (2) vested jurisdiction in Richland County Family Court, South Carolina; and (3) ordered a paternity test to determine whether Birthfather was the biological father of Baby Girl. The family court specifically noted it had reviewed information regarding Birthfather's criminal history which included domestic violence and drug offenses. In addition, the family court found that, pursuant to South Carolina's Uniform Child Custody Jurisdiction Act (UCCJA), South Carolina is Baby Girl's "home state," and it was in the baby's best interest for South Carolina to assume jurisdiction.[1] ("August S.C. Order").

---

1. Birthfather had notice of this emergency hearing, but his South Carolina counsel arrived too late to participate. Counsel then filed a Rule 59(e) motion to reconsider. The family court denied the motion

On August 4, 2006, Birthmother filed a petition **in Illinois** circuit court to vacate her consent to adoption and have the baby returned to her. She alleged in an affidavit that she and Birthfather began dating in January 2005 and were living together by September 2005. In mid-October 2005, she filed assault charges against Birthfather, and he was arrested. Birthmother found out she was pregnant and contacted an adoption agency, which put her in contact with appellants. Thereafter, attorney Patton contacted her to assist with the adoption and told Birthmother that appellants would be paying Patton's costs.

According to Birthmother, she signed the consent to adoption one hour before 72 hours had elapsed from birth.[2] She further stated that Patton told her if she did not list Birthfather's name on the adoption papers, then he would not need to be notified. Finally, she alleged Patton had a conflict of interest representing her.

On September 8, 2006, the Illinois circuit court vacated *ab initio* the June Illinois Order which appointed Patton temporary guardian of Baby Girl. The Illinois court found that Birthmother intentionally failed to disclose Birthfather's identity and the failure to give notice to Birthfather "deprived the

---

on October 14, 2006, because appellants did not receive timely notice of the motion.

**2.** Birthmother's allegation appears to be that **Illinois law** requires that 72 hours elapse prior to consenting to adoption. At the June 19th hearing, however, Birthmother stated under oath that she was consenting to adoption by a South Carolina couple, and also her consent to that adoption was going to be memorialized as a consent **under South Carolina law.** In the Consent to Jurisdiction that she signed on June 19th, Birthmother stated the following:

I have been advised that under South Carolina law, my Relinquishment can be signed anytime after the birth of the child and that my Relinquishment is irrevocable upon signing. I have been advised that I may challenge the validity of my Relinquishment only by filing a petition in South Carolina alleging fraud, coercion, duress, or that I did not sign the Relinquishment voluntarily and that my child's best interest would be served by being removed from the care of the adoptive parents.

This is an accurate summary of the applicable South Carolina law, under which there is no waiting period required prior to signing a relinquishment for purposes of adoption. *See* S.C.Code Ann. §§ 20-7-1700 through 1720 (Supp. 2006).

[Illinois] Court of the jurisdiction to have granted the guardianship." Additionally, the Illinois court ordered the return of Baby Girl **to Birthmother** in Illinois. Appellants were not named as parties to this Illinois matter and were not referenced in the written order.[3] ("September Illinois Order").

Thereafter, Birthfather filed a motion **in South Carolina** family court to vacate the August S.C. Order which awarded appellants temporary custody of Baby Girl. A hearing was held in family court before Judge Jones on October 20, 2006. On December 15, 2006, Judge Jones issued an order which found that Illinois "first exercised jurisdiction" over Baby Girl at the June 19th proceedings and "exercised continuing jurisdiction" by vacating the June Illinois Order. The family court further noted that a telephone conference was held with the presiding Illinois judge and "a determination was made that the State of Illinois is the 'home state' " of Baby Girl pursuant to South Carolina's UCCJA. The order further stated that under the ICPC, S.C.Code Ann. § 20–7–1980(5)(a) provides for a retention of jurisdiction. Therefore, the family court granted Birthfather's motion to dismiss based on a lack of subject matter jurisdiction. ("December S.C. Order").

Meanwhile, Birthmother had filed a custody action **in South Carolina** family court on December 7, 2006, that essentially asked the South Carolina court to enforce the September Illinois Order which awarded Birthmother custody of Baby Girl. Birthmother did not name Birthfather as a party in this action. Appellants answered and filed a counterclaim and a cross-claim, naming Birthfather as a party. After a hearing, Judge Jones issued an order on February 13, 2007, which: (1) granted Birthmother's request to enforce the September Illinois Order; and (2) dismissed appellants' counterclaim and cross-claim. Additionally, the family court commanded appellants to deliver Baby Girl to Birthmother's counsel no later than February 23, 2007, "unless the Illinois court says otherwise." ("February S.C. Order").

---

**3.** According to Respondents' brief, appellants received notice of the hearing and made a special appearance to object to jurisdiction. However, according to appellants' brief, they received only "indirect notice" of the Illinois proceedings. While they retained Illinois counsel to enter a special appearance to contest jurisdiction, appellants claim they were never provided with copies of the pleadings to vacate the guardianship.

Appellants appealed both orders and petitioned the Court of Appeals for a writ of supersedeas to leave in force the August S.C. Order which granted appellants temporary custody of Baby Girl. Those petitions were denied. It appears from the record that on February 23, 2007, appellants surrendered custody Baby Girl, who was then over eight months old.

### Additional Procedural History

Approximately one month before the scheduled oral argument in this case, Birthfather's South Carolina counsel requested to be relieved. Birthfather joined in the request, and both filed affidavits with this Court. Counsel stated she believed she had just cause to make the request because, *inter alia*, Birthfather had failed to pay her as agreed. Birthfather stated in his affidavit that he knew of the hearing scheduled for November 15, 2007. He then stated as follows: "I understand that if I do not hire replacement counsel, the Court may presume that it is my intention to forfeit my rights in this matter." The Court granted the motion to be relieved. Birthfather did not retain replacement counsel and did not appear *pro se* at the oral argument.

### ISSUES

1. Did the family court err in dismissing the adoption action based on a lack of jurisdiction?

2. Did the family court err in granting full faith and credit to the September Illinois Order when the Illinois proceedings were held without proper notice to appellants and they were not named as parties?

### DISCUSSION

Before proceeding to the full discussion of the legal issues, we note that this is a difficult case. It is complicated, both factually and legally, and of course, it is an emotional issue for all the parties involved. Most significantly, the ultimate decision impacts the life of a very young child.

In addition, Birthfather has forfeited his rights in this matter, per his affidavit submitted to this Court. Although he is the party who petitioned the Illinois court to vacate its initial order, and he is the one who requested that the South

Carolina adoption matter be dismissed, he is no longer legally asserting his rights at all in this matter.

## 1. Jurisdiction

█ Appellants argue that South Carolina is the appropriate jurisdiction to litigate the custody and adoption of Baby Girl. More specifically, appellants contend that under applicable federal and state statutes, jurisdiction vested in South Carolina when the family court issued the August S.C. Order which gave temporary custody of Baby Girl to appellants. Therefore, the Illinois court should not have issued its September Illinois Order which altered Baby Girl's custody status, and the family court erred in concluding that Illinois was properly exercising continuing jurisdiction over the custody matter. We agree.

Appellants first argue that a federal statute, the Parental Kidnapping Prevention Act (PKPA), applies to this case and the family court erred in not considering its effect.

Congress enacted the PKPA in 1980. *See* 28 U.S.C. § 1738A (2000). The primary purposes of the PKPA are to: (1) promote cooperation between State courts so that a determination of custody is rendered in the State which can best decide the case in the interest of the child; (2) facilitate the enforcement of custody decrees of sister States; (3) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child; and (4) avoid jurisdictional competition and conflict between State courts in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being. *See* PKPA, Pub. L. No. 96–611, § 7(c) (1980).

The following relevant terms are defined by the PKPA:

(3) "custody determination" means a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications;

. . .

(5) "modification" and "modify" refer to a custody or visitation determination which modifies, replaces, supersedes, or

otherwise is made subsequent to, a prior custody or visitation determination concerning the same child, whether made by the same court or not;

(6) "person acting as a parent" means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;

(7) "physical custody" means actual possession and control of a child.

28 U.S.C.A. § 1738A(b). In addition, "home State" under the PKPA is defined as:

the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, **and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons.**

28 U.S.C. § 1738A(b)(4) (emphasis added).

The PKPA is primarily concerned with when full faith and credit should be given to another State's custody determination. The statute directs a State to enforce, and not modify, any custody determination made consistently with the provisions of this section by another State court. 28 U.S.C. § 1738A(a). A State's custody determination is consistent with the PKPA if the State had jurisdiction under its own law, and it was either the "home State" of child or, if there is no "home State," it is in the best interest of the child that the State assume jurisdiction. *See* 28 U.S.C. § 1738A(c).[4]

The PKPA also provides when a State should **not** assume jurisdiction:

A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of

---

4. *See also* Greg Waller, Note, When The Rules Don't Fit The Game: Application Of The Uniform Child Custody Jurisdiction Act And The Parental Kidnaping Prevention Act To Interstate Adoption Proceedings, 33 Harv. J. on Legis. 271, 282 (1996) (Under the PKPA, preference is given to "home state" jurisdiction, but "best interest" jurisdiction may be asserted when no other state qualifies as the child's "home state") (hereinafter *"When The Rules Don't Fit The Game"*).

another State **where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.**

28 U.S.C. § 1738A(g) (emphasis added).

In other words, when another state has already entered a custody determination concerning this child, the inquiry is "whether the first-in time court's exercise of jurisdiction was in accordance with the PKPA and whether that jurisdiction continues." *People ex rel. A.J.C.*, 88 P.3d 599, 611 (Colo.2004).

Appellants' argument is that the August SC Order granting them temporary custody of Baby Girl was consistent with the PKPA, and therefore, the September Illinois Order was issued in contravention of the PKPA. This begs the question of whether the very first order issued in this case—the June Illinois Order—was a custody order for PKPA purposes. If it was, then arguably Illinois is the "first-in-time" court, and the August SC Order should not have been issued. However, in our opinion, the initial Illinois order was not a "custody determination" as that term is used in the PKPA.

First, we note the record reveals no "pleadings" for the June Illinois proceedings. Likewise, there is no **written** order in the record. The only evidence of the proceedings is the June 19th transcript. From this transcript, we find that the purpose and result of the proceedings was a limited one—to name attorney Patton temporary guardian for the purpose of facilitating both the interstate transport of Baby Girl from Illinois to South Carolina and the subsequent South Carolina adoption. Indeed, it appears that under Illinois law, such naming of a guardian empowers the guardian to consent to adoption. *See* 705 Ill. Comp. Stat. Ann 405/3–30; *see also* 750 Ill. Comp. Stat. Ann.50/1(F) (stating that a child is available for adoption when a person authorized by law, other than the parents, has consented).

The PKPA clearly envisions physical custody determinations. *See* 28 U.S.C.A. § 1738A(b)(7). In the instant case, Baby Girl never "lived with" Patton—Patton simply never had physical custody of the baby. Moreover, it is obvious from the transcript that Patton was not named guardian for the purpose of her becoming a "person acting as a parent," and

Patton has never claimed a right to Baby Girl's custody. *See* § 1738A(b)(6). Consequently, we find the June Illinois Order was not a "custody determination" as that term is defined under the PKPA.[5]

Because its initial order was not a custody determination, the Illinois courts simply did not have jurisdiction **over the custody of Baby Girl** prior to the South Carolina court's exercise of jurisdiction. Additionally, Illinois could not have "continuing jurisdiction" if it never had initial jurisdiction over the custody matter; therefore, the Illinois court also did not have jurisdiction under the PKPA to issue its September Illinois Order. *See* § 1738A(d) (providing for continuing jurisdiction only if the custody determination originally made was consistent with the PKPA).

Therefore, the South Carolina family court was, under the PKPA, the "first-in-time" court to make a custody determination when it issued the August SC Order which granted temporary legal custody of Baby Girl to appellants. *People ex rel. A.J.C., supra.* The next inquiry is whether this order was issued properly under the PKPA.

■■ The August SC Order determining custody is consistent with the PKPA if the family court had jurisdiction under South Carolina law, and: (1) South Carolina was the home State under the PKPA, or (2) if no home State existed at the time, it was in Baby Girl's best interest for South Carolina to assume jurisdiction. *See* 28 U.S.C. § 1738A(c). Pursuant to the PKPA, the best interest of the child is met when the child and at least one contestant have a significant connection with the State assuming jurisdiction (other than mere physical presence in the State), and there is substantial evidence concerning the child's present or future care, protection, train-

---

5. We recognize that many guardianship orders may indeed be custody determinations subject to the PKPA, but only when those orders truly confer custody of the child on the named guardian. *See, e.g., Jackson v. Hendricks,* 179 Vt. 549, 893 A.2d 292 (2005) (where the case involved a Vermont family court's modification of an existing custody determination which was a Connecticut order awarding legal guardianship, i.e. custody, of the child to his maternal grandmother). It is clear, however, that the Illinois "guardianship" in the instant case is distinct from a guardianship which awards custody.

ing, and personal relationships in the State assuming jurisdiction. 28 U.S.C. § 1738A(c)(2)(B).

When the family court issued the August SC Order granting temporary custody to appellants, Baby Girl had been living with appellants in South Carolina since she was four days old, and appellants had filed an adoption action in South Carolina family court. Because Baby Girl was born in Illinois and hence had not lived in South Carolina from birth, we find South Carolina cannot be considered Baby Girl's home State.[6] We find, however, that it clearly was in Baby Girl's best interest to have South Carolina assume jurisdiction because, **at that time,** she had a significant connection to this State, and South Carolina was the only State in which there was evidence concerning her care and personal relationships. *See* 28 U.S.C. § 1738A(c)(2)(B). Accordingly, we hold the August SC Order granting appellants' temporary custody of Baby Girl was proper under the PKPA.

█ In contrast, the September Illinois Order contravened the PKPA. When the Illinois court granted Birthfather's request to vacate the guardianship proceedings and ordered the return of Baby Girl to Birthmother, there was already in place a South Carolina custody order. Thus, we agree with appellants that the September Illinois Order ran afoul of the PKPA. *See* 28 U.S.C. § 1738A(a) (a State shall not modify any custody determination made consistently with the provisions of this section by another State court). Furthermore, under 28 U.S.C. § 1738A(g),[7] the Illinois court should not have modified the custody arrangement because there was an adoption action pending in South Carolina which was proceeding properly under the PKPA. Thus, we agree with appellants that the Illinois court's exercise of jurisdiction which modified the custody arrangement violated the PKPA.

---

6. The "home State" concept will be discussed more fully *infra*.

7. Section 1738A(g) states that a State court shall not exercise jurisdiction in any proceeding for a custody determination that is "commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with" the PKPA.

■■■■ Appellants next argue that under South Carolina's Uniform Child Custody Jurisdiction Act ("UCCJA"), South Carolina is the "home State" of Baby Girl. As stated above, however, we find that South Carolina cannot be Baby Girl's "home State." Instead, we find Baby Girl had no home state under either the PKPA or the UCCJA.

The Legislature passed the UCCJA in 1981. *See* S.C.Code Ann. § 20–7–782 *et seq.* (1985). The stated purposes of the legislation are essentially the same as those listed above for the PKPA. *See* S.C.Code Ann. § 20–7–784(a)(1)–(3). The Court of Appeals has held that because an adoption action ultimately results in the termination of a natural parent's custody rights, an adoption proceeding properly falls within the ambit of the UCCJA. *Clark v. Gordon*, 313 S.C. 240, 242–43, 437 S.E.2d 144, 145–46 (Ct.App.1993).

Similar to the PKPA, the UCCJA defines "home State" as:

the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned.

S.C.Code Ann. § 20–7–786(5). The UCCJA confers jurisdiction on the South Carolina family court if South Carolina is the home State of the child at the time of commencement of the proceeding. S.C.Code Ann. § 20–7–788(a)(1). In the alternative, the UCCJA allows jurisdiction if it is in the best interest of the child, defined similarly as in the PKPA. *See* S.C.Code Ann. § 20–7–788(a)(2).

Regarding the home State debate, courts in several jurisdictions have decided that when a baby who is born in one State, but within days of birth is transported to another State, the baby simply has **no** home State. *See, e.g., In re Zachariah K.*, 6 Cal.App.4th 1025, 8 Cal.Rptr.2d 423 (1992); *Matter of Adoption of Baby Girl B.*, 19 Kan.App.2d 283, 867 P.2d 1074, 1080 (1994); *Matter of Adoption of Child by T.W.C.*, 270 N.J.Super. 225, 636 A.2d 1083, 1088 (App.Div.1994). We agree with these jurisdictions and find that Baby Girl has no home State under the UCCJA.

First, the express language of the home State definition precludes South Carolina from being the home State of Baby Girl. S.C.Code Ann. § 20–7–786(5) (when the child is less than six months old, the home State is the State in which the child lived **from birth**). Baby Girl was born in Illinois; she did not live in South Carolina from birth. Second, because Baby Girl was born in Illinois, but only remained in that State for less than four days, Illinois cannot be considered the home State of Baby Girl. *Cf. In re D.S.*, 217 Ill.2d 306, 298 Ill.Dec. 781, 840 N.E.2d 1216, 1222 (2005) (where the Illinois Supreme Court stated that "a temporary hospital stay incident to delivery is simply insufficient to confer 'home state' jurisdiction" under the UCCJEA). Accordingly, we find Baby Girl had no home State at the time the orders on appeal were issued.

■ When the child has no home State, the court must "examine whether a sufficiently significant connection and substantial evidence exists to exercise jurisdiction." *In re Amberley D.*, 775 A.2d 1158, 1164 (Me.2001); *see also* 28 U.S.C. § 1738A(c)(2)(B) (jurisdiction vests if in best interest of child); S.C.Code Ann. § 20–7–788(a)(2) (same).

We find that under both the PKPA and the UCCJA, the South Carolina family court had appropriately assumed jurisdiction when it issued the August SC Order. *See id.* Because jurisdiction was proper in South Carolina, Illinois inappropriately modified the custody determination in its September Illinois Order. *See* 28 U.S.C. § 1738A(g); see also S.C.Code Ann. § 20–7–794(a).

■■ In sum, we hold the family court erred in dismissing appellants' adoption case based on a lack of jurisdiction.[8]

---

8. We note the family court also erred in finding that pursuant to the ICPC, Illinois had jurisdiction in this case. While the ICPC does state that the "sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody ... of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted," S.C.Code Ann. § 20–7–1980 (1985), we find this section was not meant to trump both the federal (PKPA) and state (UCCJA) statutory sections more specifically related to conferring jurisdiction. *See When The Rules Don't Fit The Game*, 33 Harv. J. on Legis. at 288 n. 76 ("Since a court is only one of many parties that may be a 'sending agency' under the ICPC, 'jurisdiction' arguably has a different meaning under the ICPC than under the

Under both federal and state law, the South Carolina family court had jurisdiction to make the custody determination found in the August SC Order.

### 2. *Full Faith and Credit*

 Appellants next argue the family court erred in its February SC Order when it accorded full, faith and credit to the September Illinois Order. Appellants maintain the Illinois order is flawed because they were not named as parties to the Illinois actions and were not given proper notice and an opportunity to be heard. We agree.

The PKPA requires that before a custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of a child. 28 U.S.C. § 1738A(e); *see also* S.C.Code Ann. § 20–7–790 (providing the same requirements under the UCCJA).

 "The purpose of the UCCJA requiring notice is to preserve the fairness of the hearing." *Clark v. Gordon*, 313 S.C. 240, 246, 437 S.E.2d 144, 147 (Ct.App.1993). Put simply, the family court must " 'afford full faith and credit to custody orders of other states **only if** those orders are competently entered in accordance with standards set forth in' " the UC-CJA. *Id.* at 245, 437 S.E.2d at 147 (Ct.App.1993) (quoting *Purdie v. Smalls*, 293 S.C. 216, 222, 359 S.E.2d 306, 309 (Ct.App.1987)) (emphasis added). In other words, "judgments obtained in violation of procedural due process are not entitled to full faith and credit when sued upon in another jurisdiction." *Purdie v. Smalls*, 293 S.C. at 220, 359 S.E.2d at 308.

Here, it is clear from the face of the Illinois pleadings appellants were never named as parties despite the fact that they had physical custody of Baby Girl. This is a patent

UCCJA and PKPA."). Moreover, we note the ICPC was designed to ensure that placements for children across state lines are safe; it was not designed to protect the rights of the birth parents. *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 701 A.2d 110, 121 (1997). Certainly, there was no evidence that Baby Girl's placement with appellants had become unsafe in any way.

violation of both federal and state law. *See* 28 U.S.C. § 1738A(e); S.C.Code Ann. § 20–7–790.

 Moreover, although appellants received indirect notice of the Illinois hearing and retained an attorney to enter a special appearance, they were never officially served notice of the hearing and were not provided with copies of the pleadings. Respondents contend that because appellants admit they had actual notice and made an appearance, their due process rights were protected. We disagree. Where there is not even an attempt at service of process, the notice requirements of the PKPA are not met, and actual notice is insufficient to confer personal jurisdiction. *See Ex parte D.B.,* —— So.2d ——, 2007 WL 1723618, *12–13 (Ala.2007).

In the instant case, appellants were consistently excluded as parties from the Illinois pleadings filed by both Birthfather and Birthmother. This was unfair to appellants who, at the time, had physical custody of Baby Girl. We find appellants' due process rights were compromised in the resulting Illinois court proceedings, and therefore, South Carolina is not bound by the September Illinois Order. *Clark v. Gordon, supra* (judgments obtained in violation of procedural due process are not entitled to full faith and credit).

Accordingly, we hold the family court erred in issuing its February SC Order which enforced the September Illinois Order awarding custody to Birthmother.

## CONCLUSION

For the reasons discussed above, we reverse the family court orders which dismissed appellants' adoption action and enforced the Illinois custody award to Birthmother. Accordingly, we reinstate: (1) the August SC Order awarding custody of Baby Girl to appellants, and (2) appellants' adoption action. Furthermore, we order Birthmother to return Baby Girl to appellants within fifteen (15) days of the date of this opinion. This matter is remanded to the family court for further proceedings consistent with our decision.

**REVERSED AND REMANDED.**

MOORE, A.C.J., PLEICONES, BEATTY, JJ., and Acting Justice J. ERNEST KINARD, JR., concur.