**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Allison Shoemaker, Appellant,

v.

Zachary Thacher, Respondent.

Appellate Case No. 2025-001310

———————

Appeal From Lexington County
W. Greg Seigler, Family Court Judge

———————

Unpublished Opinion No. 2026-UP-148
Heard March 18, 2026 – Filed March 24, 2026

———————

**AFFIRMED**

———————

James Emerson Smith, Jr., of James E. Smith, Jr., PA, of Columbia, for Appellant.

George Murrell Smith, Jr., of Smith Robinson Holler DuBose Morgan, LLC, of Sumter, Austin Tyler Reed and Frederick Newman Hanna, Jr., of Smith Robinson Holler DuBose Morgan, LLC, of Columbia, and Carrie Ann Warner, of Warner Law Firm, LLC, of Columbia, all for Respondent.

———————

**PER CURIAM:** This case arises from the family court's order granting Respondent Zachary Thacher's (Father) motion to dismiss for lack of subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act[1] (UCCJEA). On appeal, Appellant Allison Shoemaker (Mother) argues the family court erred by (1) finding New York to be Child's home state under the UCCJEA, (2) dismissing the case without considering Child's best interests, (3) dismissing the case when Father purposely availed himself of South Carolina jurisdiction, and (4) failing to make sufficient findings to support the relief granted pursuant to Rule 60(b), SCRCP. We affirm.

1.      Mother argues the family court erred in finding New York to be the home state of Child under the UCCJEA. Mother also argues New York lacks exclusive and continuing jurisdiction because South Carolina was the first to make a finding that it had jurisdiction. We disagree. "Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *S.C. Dep't of Soc. Servs. v. Tran*, 418 S.C. 308, 314, 792 S.E.2d 254, 257 (Ct. App. 2016) (quoting *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994)). "[T]he UCCJEA govern[s] subject matter jurisdiction in interstate custody disputes." *Id.* at 315, 792 S.E.2d at 257 (quoting *Anthony H. v. Matthew G.*, 397 S.C. 447, 451, 725 S.E.2d 132, 134 (Ct. App. 2012)). Pursuant to the UCCJEA, South Carolina has jurisdiction to make an initial child custody determination only if:

> (1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State, but a parent or person acting as a parent continues to live in this State;
> (2) a court of another state does not have jurisdiction under item (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under [s]ection 63-15-342 or 63-15-344, and:
> (a) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

---

[1] S.C. Code Ann. §§ 63-15-300 to -394 (2010 & Supp. 2025).

(b) substantial evidence is available in this State
concerning the child's care, protection, training, and
personal relationships;
(3) all courts, having jurisdiction under item (1) or (2),
have declined to exercise jurisdiction on the ground that a
court of this State is the more appropriate forum to
determine the custody of the child under [s]ection 63-15-
342 or 63-15-344; or
(4) no court of any other state would have jurisdiction
under the criteria specified in item (1), (2), or (3).

§ 63-15-330(A) (2010). Under the UCCJEA, the home state is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." S.C. Code Ann. § 63-15-302(7) (2010). For children less than six months old, the home state is where the child lived from birth with a parent or person acting as a parent. *Id.* Importantly, periods of temporary absence by the child or parent are included in calculating the six-month period. *Id.*

Based on our de novo review, we find the family court's home state determination was supported by a preponderance of the evidence. *See Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011) ("In appeals from the family court, this [c]ourt reviews factual and legal issues de novo."); *Greene v. Greene*, 439 S.C. 427, 439–40, 887 S.E.2d 157, 164 (Ct. App. 2023) ("The appellant bears the burden of convincing the appellate court that the family court committed error or the preponderance of the evidence is against the family court's findings."). At the time Mother filed the South Carolina action, Father had already initiated a custody proceeding in New York. Mother admitted she was aware of the New York proceedings, and New York never denied jurisdiction. In fact, immediately after the South Carolina dismissal order was entered, a hearing was held in New York to address custody and visitation issues. Although Mother argues she resided in South Carolina continuously with Child from his birth on December 23, 2024, until April 2025, and any visits to New York during that period were merely temporary, we find the evidence in the record does not support such a finding. Rather, the evidence establishes that although Child was born in South Carolina, most of his life was spent in New York. Mother's own filings reflecting various addresses evidence a lack of permanent residence in South Carolina. Child visited New York

pediatricians on January 26, February 2, February 24, and March 24.[2]  At each visit, Mother listed her address as her Brooklyn apartment.  These visits coincide with Father's testimony that Mother and Child lived in New York for 76 days spanning from January 23 to April 9, with the exception of a six-day visit to South Carolina from March 17 to March 22.  We find further support for Father's argument that Mother was not living permanently in South Carolina prior to April 9 in the April 10 email correspondence between the parties' counsels.  In the correspondence, two days after mediation in New York, Mother's counsel indicated, "she'll be living in SC now[,]" and further stated he was "unaware [Father and Father's counsel] were unaware" of the change in her location.  These facts support a finding that Mother left New York, unbeknownst to Father, in the middle of the mediation process.  Additionally, the baby registry created in Mother's name indicated her address was in New York, and although Mother was permitted to work remotely during her time in South Carolina, her employment remained in New York.

We hold the family court did not err when it found New York to be Child's home state under the UCCJEA.  *See* § 63-15-340(A) (providing that "a court of this State may not exercise its jurisdiction . . . if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction . . .  unless the proceeding has been terminated or is stayed by the court of the other state"); *Tran*, 418 S.C. at 317, 792 S.E.2d at 259 (holding South Carolina lacked subject-matter jurisdiction to issue final orders removing a child from custody and terminating parental rights because Georgia was the child's home state, there was a custody order in Georgia, and no evidence showed Georgia had declined jurisdiction); *Matthew G.*, 397 S.C. at 454–55, 725 S.E.2d at 136 (finding South Carolina lacked jurisdiction to terminate parental rights and grant a stepfather's adoption petition because Georgia courts had entered an initial custody order and retained exclusive, continuing jurisdiction, with no evidence that Georgia declined to exercise jurisdiction or determined South Carolina was a more convenient forum).

---

[2] Although Mother provided pediatric records from South Carolina, those records reflect Child was treated on three occasions: December 27, 2024, January 17, 2025, and April 24, 2025.  Notably, Father testified he drove Mother and Child back to New York on January 23, 2025.  Thus, the first two visits were prior to her return to New York, and the third visit was after the family court entered its initial order on Mother's motion, determining South Carolina had jurisdiction.

2.      Mother argues the family court erred in dismissing the case without adequately considering Child's best interests.  Specifically, Mother argues, "The UCCJEA prioritizes the best interests of the child by ensuring that custody determinations are made in the state with the closest connections to the child and where evidence concerning the child's care and relationships is most readily available."  Mother avers there was substantial evidence of significant connections in South Carolina, and the court erred "in failing to recognize these connections and evidence."  We disagree.  Under section 63-15-330(A)(2), a South Carolina court may exercise jurisdiction based on significant connections only if "a court of another state does not have jurisdiction under item (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum."  "When the child has no home State, the court must 'examine whether a sufficiently significant connection and substantial evidence exists to exercise jurisdiction.'"  *Doe v. Baby Girl*, 376 S.C. 267, 283, 657 S.E.2d 455, 463 (2008) (quoting *In re Amberley D.*, 775 A.2d 1158, 1164 (Me. 2001)).

Here, we find the significant connections analysis was not required based on the family court's determination that New York was Child's home state.  New York retained jurisdiction as the home state and never declined to exercise such jurisdiction.  As such, an alternative analysis for jurisdiction was unnecessary.  However, even if the analysis was necessary, we still find South Carolina would not meet the significant connections threshold for jurisdiction.  *See Cullen v. Prescott*, 302 S.C. 201, 206, 394 S.E.2d 722, 725 (Ct. App. 1990) (explaining the purpose of the UCCJEA "is to ensure custody litigation takes place in the state with the closest connections to the child and his parent(s) and where evidence concerning care, protection, training, and personal relationship is most readily available" and holding "[c]ourts will exercise jurisdiction based upon these criteria if there are sufficient contacts . . . to justify legitimate state interest in the outcome of the dispute," while clarifying that "'substantial evidence' was never intended to be used as a substitute for 'some evidence' but is intended to require a high degree of connection and access to evidence.").  We hold evidence in the record, as detailed above, supports a finding that Child's significant connections were in New York, not South Carolina.

3.      Mother argues Father purposely availed himself of South Carolina's jurisdiction because he hired South Carolina counsel, entered into the Agreement regarding custody, visitation, and child support, and performed under the Agreement.  We disagree.  "[I]f a court of this State has jurisdiction under this article because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless: (1)

the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction[.]" § 63-15-344(A)(1). Section 63-17-40 governs settlement and voluntary agreements and makes clear that child support agreements must be in writing, properly verified, and approved by the court before they have any legal effect. S.C. Code Ann. § 63-17-40(A) (Supp. 2025). It further requires that the agreement be accompanied by financial declarations and affidavits from the parents stating they understand and are voluntarily entering the agreement. *Id.* A nonresident of South Carolina does not subject themselves to jurisdiction in this state unless the formalities of § 63-17-40 are followed and the agreement is filed along with a summons and complaint. *Id.*

We hold Father did not purposely submit himself to South Carolina jurisdiction solely because he entered into and performed under the Agreement prior to Child's birth. As a threshold matter, the Agreement was never approved by the court. *See* S.C. Code Ann. § 63-17-40(A) ("Upon the court's approval, the settlement or voluntary agreement becomes an order of the court."). The Agreement was signed the day before Child's expected due date, and according to Father, it was a result of Mother withholding birth plan information—such as the location, date, and time of delivery. Father stated that because the parties were not married, he engaged South Carolina counsel to ensure his access to Child was preserved via written contract. Further, the Agreement itself was limited in scope, emphasizing its temporary nature. The terms of the Agreement explicitly state it was executed to address *immediate* issues and the terms would only remain in effect "until modified by a subsequent court order or mutual written agreement." It deferred any future issues relating to Child and made explicit visitation and support provisions for the first ten days of Child's life. Father stated he paid child support pursuant to the South Carolina guidelines because he felt it was legally and ethically right to provide financial support as a non-custodial parent, not because he was submitting to jurisdiction. His support payments were voluntarily made, not court ordered. Our finding that Father did not purposely avail himself of South Carolina jurisdiction is further supported by Father's South Carolina counsel filing a limited notice of appearance solely to contest jurisdiction. The same day the limited notice was filed, Father moved to dismiss the case for lack of jurisdiction. He never acquiesced to jurisdiction; rather, Father has spent much of the litigation rejecting Mother's claims of South Carolina jurisdiction. We affirm.

4. Mother argues the family court erred in failing to make sufficient findings of fact and conclusions of law to support the relief granted pursuant to Rule 60(b), SCRCP. We disagree. We hold the family court did not err in dismissing the case and vacating the previous order based on lack of subject matter jurisdiction and

Mother's conduct. *See* Rule 60(b)(3), SCRCP (granting relief from judgment based on extrinsic fraud, misconduct, or misrepresentation by the adverse party). In the June 30 order, the family court found Mother did not relocate to South Carolina with Child until April 9, 2025. It further found Mother was aware of the New York custody proceedings at the time she filed her South Carolina action. The court held the evidence before it supported a finding that New York was the home state because Child's pediatric records were in New York, the parties engaged in mediation in New York, and although Child was born in South Carolina, Mother returned to New York after the birth and that is where Child's significant contacts and connections were located. It further found the New York courts had not declined jurisdiction in its proceedings. Finally, the court cited section 63-15-344, which allows the court to decline to exercise jurisdiction if the party seeking to invoke its jurisdiction has engaged in unjustifiable conduct. The court held Mother's conduct "constitutes an abuse of the jurisdictional process under the UCCJEA." We hold the family court properly made findings and those findings were supported by the preponderance of the evidence in the record. *See Raby Constr., L.L.P. v. Orr*, 358 S.C. 10, 20, 594 S.E.2d 478, 483 (2004) ("[W]hen considering whether to grant relief from final judgments, 'a court must balance the interest of finality against the need to provide a fair and just resolution of the dispute.'"). Accordingly, the order of the family court is

**AFFIRMED.**

**THOMAS, MCDONALD, and TURNER, JJ., concur.**